**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| JONATHAN F. WALKER, )<br>    Movant, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    Respondent. ) | Cv. No. 2:12-cv-02365-JPM-cgc<br>Cr. No. 2:10-cr-20192-JPM-1 |

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**

On May 11, 2012, Defendant Jonathan F. Walker, Bureau of Prisons registration number 23676-076, an inmate at FCI Memphis, Tennessee, filed a motion pursuant to 28 U.S.C. § 2255 ("§ 2255 motion"). (ECF No. 1.) On September 4, 2012, the Court directed the United States to respond to the motion to vacate. (ECF No. 3.) On May 5, 2014, the United States filed a response contending that Walker's motion is without merit. (ECF No. 14.) For the reasons that follow, Walker's § 2255 motion is DENIED, and a certificate of appealability is DENIED. The Court also finds that an appeal would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.

**I.    BACKGROUND TO MOTION**

On April 28, 2010, a federal grand jury indicted Jonathan Walker in a three-count Indictment charging him with: (Count One) unlawfully conspiring to manufacture more than 50 grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846; and (Counts Two and Three) knowingly and intentionally

possessing pseudoephedrine and having reasonable cause to believe that the listed chemical would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2). (*United States v. Walker*, No. 2:10-cr-20192-JPM-1 (W.D. Tenn. filed April 28, 2010), ECF Nos. 1-3.) On August 15, 2011, Walker pleaded guilty to Counts Two and Three of the Indictment pursuant to a written plea agreement. (*Id.*, ECF Nos. 36, 39.) The plea agreement provided:

### PLEA AGREEMENT

The following constitutes the Plea Agreement reached between the United States, represented by Edward L. Stanton, III, United States Attorney for the Western District of Tennessee, and JOSEPH C. MURPHY, JR., Assistant United States Attorney, and the defendant, JONATHAN WALKER, represented by MICHAEL EDWIN SCHOLL, defense counsel. The parties enter into the following Plea Agreement pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure:

1. JONATHAN WALKER agrees that he will enter a voluntary plea of guilty to count(s) 2 and 3 of the indictment. The parties stipulate and agree that the total amount of pseudoephedrine possessed by the defendant in violation of the statute, based upon a conservative estimate, was approximately 200.96 grams, and that this figure includes relevant conduct. The parties hereto agree pursuant to Rule 11 (c)(1)(C) that the Court may accept or reject this provision of the plea agreement. In the event that the Court rejects this provision of the plea agreement, then the government agrees that the defendant may withdraw his guilty plea. In the event that the defendant withdraws his guilty plea pursuant to this provision, then this agreement shall be null and void.

2. The United States agrees to dismiss any remaining counts of the indictment against the defendant at the appropriate time.

3. Given the facts in the possession of the United States at the time of the writing of this agreement, the United States does not oppose the defendant receiving acceptance of responsibility credit pursuant to U.S.S.G. Section 3E1.1. The defendant understands that if the United States receives information between the signing of this agreement and the time of the sentencing that the defendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation in any additional criminal activities between now and the time of sentencing, this position could change. Further, the defendant understands that whether or not acceptance of responsibility credit pursuant to Section 3E1.1 is granted is a matter to be determined by the district court. Failure of the district court to grant

2

acceptance of responsibility credit is not a basis for JONATHAN WALKER to withdraw his guilty plea.

      4. Defendant understands that Title 18, United States Code Section 3742 gives him the right to appeal the sentence imposed by the Court. Acknowledging this, defendant knowingly and voluntarily waives his right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as the sentence is within the statutory maximum specified above. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct and ineffective assistance of counsel.

      5. JONATHAN WALKER agrees that this plea agreement constitutes the entire agreement between himself and the United States and that no threats have been made to induce him to plead guilty. By signing this document, JONATHAN WALKER acknowledges that he has read this agreement, has discussed it with his attorney and understands it.

(*Id.*, ECF No. 39 at PageID 58-60.)

The United States Probation and Pretrial Services prepared a presentence investigation report ("PSR"), which recommended a total offense level of 35 for Counts Two and Three, and criminal history category of VI because he qualified as an armed career criminal pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4B1.4. (PSR at 7, 15.) The PSR calculated Walker's advisory guideline range at 292 to 365 months of imprisonment. (PSR at 15.) Although it was not reflected in the PSR, Walker was subject to a mandatory minimum sentence of five years (sixty months) on Count One under 21 U.S.C. §§ 846, 841(b)(1)(B)(viii). Defense counsel filed the following objections to the PSR:

    1. Defendant objects to paragraph 8 of the Presentence Investigation Report in that he was not the "ringleader".

    2. Defendant objects to paragraph 22 of the Presentence Investigation Report in that he was not a manager or supervisor.

    3. Defendant objects to paragraph 25 of the Presentence Investigation Report in that he should receive a 3 point reduction for acceptance of responsibility.

4. Defendant objects to paragraph 26 of the Presentence Investigation Report in that the Total Offense Level should be 29.

5. Defendant objects to paragraph 27 of the Presentence Investigation Report in that the Total Offense Level should still be 29.

6. Defendant objects to paragraph 38 of the Presentence Investigation Report. Although a career offender's status directs the Court to follow a Criminal History Category of VI, Defendant would state that this overstates his actual criminal history and that the Court should consider him to be category IV.

7. Defendant objects to paragraph 71 of the Presentence Investigation Report in that the Total Offense Level should be 29, the Criminal History Category should be IV and the Guideline Imprisonment Range should be 121 to 151 months.

8. Defendant objects to paragraph 72 of the Presentence Investigation Report in that the impact of the plea agreement should be the same as paragraph 7 above.

(*United States v. Walker*, No. 2:10-cr-20192-JPM-1 (W.D. Tenn. filed April 28, 2010), ECF No. 42 ¶¶ 1-8.)

On January 24, 2012, the Court held a sentencing hearing. (*Id.*, ECF No. 53.) At the sentencing hearing, the Court accepted the plea agreement and sentenced Jonathan Walker to 180 months of incarceration as to each of Counts Two and Three to be served concurrently, three years of supervised release as to each of Counts Two and Three to be served concurrently, restitution of $2,500, and a special assessment of $200. (*Id.*, ECF No. 57.) Walker did not appeal.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

4

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted). A defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

"If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668 . . . (1984)." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011). To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687.

*Richter*, 562 U.S. at 104.

5

The two-part test stated in Strickland applies to challenges to guilty pleas based on the ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

## III. ANALYSIS

Walker requests the Court to vacate his sentence on three bases: 1) the guilty plea "was unlawfully induced or not made voluntar[ily] or with understanding of th[e] nature of th[e] charge and th[e] consequences of the plea" (§ 2255 Motion at PageID 4); 2) ineffective assistance of counsel for defense counsel's failure to discuss the plea agreement with Walker (*id.*); and 3) ineffective assistance of counsel for defense counsel's failure to discuss waiver of appeal with Walker[1] (*id.* at PageID 3). The United States has responded that Defendant's entire motion is without merit and should be denied. (ECF No. 14.)

---

[1] Although not expressly listed as grounds for relief, the Court construes the following statements made in Walker's explanation of his reason for not appealing the Court's judgment as an independent assertion for relief: "I wanted to appeal my case on th[e] time that th[e] judge gave me[,] but on (1-24-12) my last day of court my lawyer (Mich[ael] Scholl) told me in my ear not to appeal my case because [I] was goin[g] to talk to th[e] (D.A.), but [I] never did. He never sat down and talk[ed] to me about my (plea deal) . . . ." (§ 2255 Motion at PageID 3.)

### A. Involuntary or Unknowing Guilty Plea

Walker states as grounds for vacating his sentence that his guilty plea "was unlawfully induced or not made voluntar[ily] or with understanding of th[e] nature of th[e] charge . . . ." (§ 2255 Motion at PageID 4.)

"[F]or a guilty plea to be valid it must be both knowing and voluntary. *Baker v. United States*, 781 F.2d 85, 88 (6th Cir. 1986) (citing *Brady v. United States*, 397 U.S. 742, 747 (1970)). Walker contends that his counsel never talked to him about the plea deal and that some documents stated that Walker was in possession of 139 grams instead of the 200.96 grams of pseudoephedrine reported in the PSR. (§ 2255 Motion at PageID 4.)

Walker's arguments and factual assertions are contradicted by the record. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure the Court conducted a plea colloquy at the change of plea hearing to ensure that Walker's plea was knowing and voluntary. *See United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988) ("Rule 11 of the Fed. R. Crim. P. has been carefully drafted and amended to the end that the guilty plea process be precise to make certain that a defendant pleading guilty understands the nature of his applicable constitutional rights, that his plea of guilty is voluntary with the full understanding of the nature of the crime charged and the consequences of his guilty plea and that there is a factual basis for the crime to which the plea is being offered.") First, the Court instructed the Government's counsel to "read over the entire plea agreement," which he did. ((*United States v. Walker*, No. 2:10-cr-20192-JPM-1 (W.D. Tenn. filed April 28, 2010), ECF No. 65 at PageID 109-112.) The Court then asked Walker whether what was read was "the agreement as [he] understand[s] it." (*Id.* at PageID 112.) Walker responded, "Yes, sir." (*Id.*) The Court asked whether anyone "made any other promise to you or has given you any other assurance in order to persuade you to plead guilty."

(*Id.*)  Walker responded, "No, sir."  (*Id.*)  The Court asked Walker whether anyone had attempted to force him to plead guilty or threatened him in any way.  (*Id.*)  Walker responded in the negative to those questions.  (*Id.*)  The Court then asked whether Walker was pleading guilty of his own free will and whether he was in fact guilty.  (*Id.* at PageID 112-13.)  Walker responded "Yes, sir" to both questions.  (*Id.* at PageID 113.)  Walker and his counsel both confirmed that Walker was pleading guilty to Counts Two and Three of the Indictment.  (*Id.* at 113-14.)

The Court next asked whether Walker understood that he was pleading guilty to two felony offenses and that he would be adjudicated a felon and would give up valuable civil rights.  (*Id.* at 114.)  Walker responded, "Yes, sir."  (*Id.*)  The Court explained in detail the maximum penalties of Counts Two and Three, and Walker confirmed that he understood those penalties.  (*Id.* at PageID 114-15.)  The Court asked Walker whether his counsel had talked with him "about how the advisory sentencing guidelines may apply to [Walker] in this case."  (*Id.* at PageID 115.)  Walker responded, "Yes, sir."  (*Id.*)  Walker confirmed that he understood his sentence could differ from "any estimate of sentence given to you by your counsel, government counsel or anybody else."  (*Id.* at PageID 116.)  The Court explained that Walker had the rights inter alia to plead not guilty and have a trial with an impartial jury at which he would be presumed innocent and the Government would have to prove his guilt beyond a reasonable doubt.  (*Id.* at PageID 117.)  Walker confirmed that he understood that he had all of the rights stated by the Court and that he was giving up those rights by entering a guilty plea.  (*Id.* at PageID 117-18.)

The Court made further investigation into Walker's plea by taking Walker's statements as to what had occurred with regard to Counts Two and Three.  Initially, Walker stated that he was unaware of the presence of methamphetamines and that once he became aware, he stopped

8

purchasing the pills. (*Id.* at PageID 131-32.) Walker's counsel then asked Walker certain questions to which Walker confirmed: 1) that he eventually became aware that his uncle was using the substance at issue to "cook meth;" 2) that he subsequently purchased more Sudafed "knowing that that was going to be used to cook meth at some point;" and 3) that he understood that Counts Two and Three were regarding those purchases. (*Id.* at PageID 133-35.) Walker then reconfirmed that he wanted to plead guilty. (*Id.* at PageID 135.) Even with Walker's factual admissions, the Court indicated that a trial would be necessary to determine Walker's guilt. (*Id.* at PageID 135-139.) When Walker expressed confusion as to why the parties were proceeding to trial, the Court explained, "No, sir, I can't take your plea. You basically said I didn't know about it at the time these offenses occurred . . . ." (*Id.* at PageID 139.) Walker then stated several times that he knew about the methamphetamine and specifically confirmed that he knew of the methamphetamine (i.e. the Sudafed would be used to "cook meth") at the time he purchased the Sudafed on October 28, 2009 and December 4, 2009. (*Id.* at PageID 139-43.) Walker also confirmed that he was confused about the timing at first, but that the reference to his two previous statements helped him remember what happened. (*Id.* at PageID 143-44.) Additionally, Walker stated with regard to Counts Two and Three, "I'm going to tell you what I did. I'm going to take my plea, I know I did that." (*Id.* at PageID 142.) The Court asked a final time how Walker wished to plead to Counts Two and Three, to which Walker responded, "Guilty." (*Id.* at PageID 144.)

Based on the change of plea proceedings outlined above, the Court complied with Rule 11 in determining that Walker understood the consequences of his plea and was voluntarily entering into his plea. *See Baker*, 781 F.2d at 92. In addition to the Court's plea colloquy, Walker's counsel Mr. Scholl has filed an affidavit stating, "Walker and I reviewed the terms of

the plea agreement." (ECF No. 14-1 ¶ 5.) Mr. Scholl additionally states, "Based upon my interaction with Walker, I believe he understood the proceedings in this case and the terms of his plea, and I had no reason to believe he was mentally incompetent or unable to understand what was happening in the case." (*Id.*) Based on the evidence that exists on the record, the Court finds that Walker's plea was knowing and voluntary. Accordingly, Walker's first claim for relief is without merit.

### B. Ineffective Assistance of Counsel

Walker asserts two bases for ineffective assistance of counsel: 1) defense counsel's failure to discuss the plea agreement with Walker; and 2) defense counsel's failure to discuss waiver of appeal with Walker. In order to succeed on a claim of ineffective assistance of counsel, Walker must prove that he suffered prejudice as a result of his counsel's ineffectiveness. *Hill*, 474 U.S. at 57. In a guilty plea case, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Walker does not assert that absent the alleged ineffective assistance of counsel, he would not have pleaded guilty and would have insisted on going to trial. (*See* § 2255 Motion.) Accordingly, Walker cannot establish prejudice and his claims of ineffective assistance of counsel are without merit.

### IV. CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant's conviction and sentence are valid, and his Motion to Vacate (ECF No. 1) is DENIED. Judgment shall be entered for the United States.

## V. APPELLATE ISSUES

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).

In this case, for the reasons previously stated, Defendant's claims lack substantive merit and, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the

11

prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a), however, also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED. If Defendant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 22nd day of July 2015.

/s/ Jon P. McCalla
JON PHIPPS MCCALLA
UNITED STATES DISTRICT JUDGE